## O. P. BAKER V. THE STATE.

No. 15799.   Delivered March 22, 1933.
Reported in 58 S. W. (2d) 534.

The opinion states the case.

*R. E. Dickson,* of Longview, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

MORROW, PRESIDING JUDGE.—Possessing a narcotic drug is the offense; penalty assessed at confinement in the penitentiary for a period of five years.

In the indictment it is charged that "in the county and state aforesaid, O. P. Baker did, then and there unlawfully possess a narcotic drug against the peace and dignity of the State."

In chapter 3, beginning with article 720 and concluding with article 726, P. C., 1925, the traffic in certain narcotic and poisonous drugs is under certain circumstances prohibited.   In chapter 97, Acts of 42nd Legislature, Regular Session, page 154, there is another statute upon the subject, which reads in part as follows:

"Sec. 1.   (a)   'Narcotic drug,' as used herein, shall mean and include opium, morphine, heroin, cocoa leaves, cocaine, marijuana, or any compound, manufacture, salt, derivative, or preparation thereof.   'Drug' when used herein shall mean narcotic drug.

"(b)   It shall be unlawful for any person to possess, have under his control, or deal in, dispense, sell, deliver, transport, distribute, prescribe, traffic in, or give away any narcotic drug."

In the same section the penalty is prescribed, which includes a fine and confinement in the penitentiary for more than five years.   The subsequent sections of the bill name the exceptions

to the inhibition contained in section 1, also enumerates other means of violation of the statute.

"Marihuana (marijuana)," pronounced "merry-huana," and called "griefo" or "merry" by addicts that use it, is a product of Mexican hemp. It contains a volatile drug. It is most often taken in the form of a smoke, and sometimes mixed with tobacco. It produces a high exhilaration, and when taken in excess, it motivates brutal criminality.

We have no authentic information touching the drug last mentioned above. No reference to it either in the dictionary or the encyclopedia has been discovered. The foregoing is from a statement in a magazine and the accuracy of the statement is not vouched for by the members of the court.

"Opium" is the product of a species of the poppy plant which is grown in India, Turkey, Persia, and Egypt. The juice or sap of the plant is taken before it is ripe and dried. Good opium is a hard, compact solid, of reddish-brown color. The sale of opium is prohibited in many countries besides the United States. See New International Encyclopedia, vol. 17, p. 490.

"Morphine" is an alkaloid of opium. Opium contains at least nine per cent of morphine. Morphine is regarded as one of the most useful of all drugs for the reason that when applied hypordermically it is unequalled as a pain-relieving drug. Morphine is not soluble in water. See Encyclopedia Britannica (14th Edition), vol. 15, p. 820.

"Heroin" is a derivative of morphine and resembles that drug. It is supposed to have a special depressing effect upon the spinal cord. It is a white crystal, soluble in water. Heroin is used in cough remedies. See Ency. Britannica, vol. 11, p. 515.

"Cocoa" is a South American shrub. Its dry leaves are a powerful nerve stimulant.

"Cocaine" is a crystalline alkaloid obtained from cocoa leaves and is used as a local anaesthetic. In large doses cocaine produces intoxicating effects similar to those of the Indian hemp. See Webster's New International Dictionary, p. 426.

While each of these substances are classed as "narcotic drugs," it is apparently manifest that an indictment in which the offense is described as unlawfully possessing a narcotic, in order to comply with the Constitution, should name the substance that is intended. In the absence of such an averment, one charged, as in the present case, with the possession of a "narcotic," would be without information in the indictment relating to the evidence that the state intended to prove. Under

such an indictment, he would be put on trial ignorant, so far as the information is contained in the indictment, of the act upon which his conviction was sought.

The classification of the articles mentioned in the statute now under consideration is an arbitrary one. The drugs are not all narcotics as is indicated by the description above stated. From Harris' Constitution, p. 85, subd. 36, the following is taken: "The constitutional 'right to demand the nature and cause of the accusation' guarantees to the accused that the indictment or information shall state every fact and circumstance necessary to a certain, specific and complete description of the particular offense imputed to him."

In order to comply with article 1, section 10, Constitution of Texas, the indictment must specify the facts which must be proved. See Hewitt v. State, 25 Texas, 722. Illustrations are numerous.

In testing the sufficiency of the indictment in the present case and in all cases, the command of the Constitution "that the accused shall have the right to demand the nature and cause of the accusation against him and to have a copy thereof" controls the statutory law. This is illustrated in the opinion of Judge Hurt in the leading case of Huntsman v. State, 12 Texas App., 619, in which it is made clear that the requirement of the Constitution mentioned must prevail against the declaration of either the courts or the Legislature. It is the intent of the Constitution that the accused in the particular case be given information upon which he may prepare his defense. This information must come from the *face* of the *indictment*. Looking elsewhere is not demanded by the law. See Huntsman v. State, supra, p. 647; also Kennedy v. State, 86 Texas Crim. Rep., 450; Clark v. State, 81 Texas Crim. Rep., 157; Pratt v. State, 53 Texas Crim. Rep., 281. That the indictment in the present instance fails to comply with such demand seems plain.

The judgment should be reversed and the prosecution dismissed, and it is so ordered.

*Reversed and dismissed.*